**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RONALD A. KATZ TECHNOLOGY LICENSING, L.P.,

Plaintiff,

v.

CITIZENS FINANCIAL GROUP, INC.,
CITIZENS BANK,
CITIZENS BANK NEW HAMPSHIRE
CITIZENS BANK OF CONNECTICUT,
CITIZENS BANK OF MASSACHUSETTS,
CITIZENS BANK OF PENNSYLVANIA,
CITIZENS BANK OF RHODE ISLAND,
CITIZENS BANK, N.A., and
CHARTER ONE BANK, N.A.,

Defendants.

CASE NO.: 1:07-cv-00210ML

**DEMAND FOR JURY TRIAL**

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF DEFENDANTS CITIZENS FINANCIAL GROUP, INC., CITIZENS BANK, CITIZENS BANK NEW HAMPSHIRE, CITIZENS BANK OF CONNECTICUT, CITIZENS BANK OF MASSACHUSETTS, CITIZENS BANK OF PENNSYLVANIA, CITIZENS BANK OF RHODE ISLAND, CITIZENS BANK, N.A., AND CHARTER ONE BANK, N.A. TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Defendants Citizens Financial Group, Inc., Citizens Bank, Citizens Bank New Hampshire, Citizens Bank of Connecticut, Citizens Bank of Massachusetts, Citizens Bank of Pennsylvania, Citizens Bank of Rhode Island, Citizens Bank, N.A., and Charter One Bank, N.A., hereby respond to Plaintiff Ronald A. Katz Technology Licensing, L.P.'s Complaint for Patent Infringement (hereinafter "Complaint") as follows:

**THE PARTIES**

1. Plaintiff Katz Technology Licensing is a limited partnership organized under the laws of the State of California, and has a principal place of business at 9220 Sunset Blvd. #315, Los Angeles, CA 90069.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2. On information and belief, Defendant Citizens Financial Group, Inc. is a Delaware entity maintaining its principal place of business at One Citizens Plaza, Providence, Rhode Island 02903.

**ANSWER:** Defendants admit the allegations contained in Paragraph 2 of the Complaint.

3. On information and belief, Defendant Citizens Bank is a Delaware entity maintaining its principal place of business at 919 North Market Street, Suite 200, Wilmington, Delaware 19801.

**ANSWER:** Defendants admit that Citizens Bank is a Delaware entity with its principal place of business at 919 North Market Street, Wilmington, Delaware, 19801, but deny the remaining allegations contained in Paragraph 3 of the Complaint.

4. On information and belief, Defendant Citizens Bank New Hampshire is a New Hampshire entity maintaining its principal place of business at 875 Elm Street, Manchester, New Hampshire 03105.

**ANSWER:** Defendants admit the allegations contained in Paragraph 4 of the Complaint.

5. On information and belief, Defendant Citizens Bank of Connecticut is a Connecticut entity maintaining its principal place of business at 63 Eugene O'Neill Drive, New London, Connecticut 06320.

**ANSWER:** Defendants admit the allegations contained in Paragraph 5 of the Complaint.

6. On information and belief, Defendant Citizens Bank of Massachusetts is a Massachusetts entity maintaining its principal place of business at 28 State Street, Boston, Massachusetts 02110.

**ANSWER:** Defendants admit the allegations contained in Paragraph 6 of the Complaint.

7. On information and belief, Defendant Citizens Bank of Pennsylvania is a Pennsylvania entity maintaining its principal place of business at 2001 Market Street, Philadelphia, Pennsylvania 19103.

**ANSWER:** Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8. On information and belief, Defendant Citizens Bank of Rhode Island is a Rhode Island entity maintaining its principal place of business at One Citizens Plaza, Providence, Rhode Island 02903.

**ANSWER:** Defendants admit the allegations contained in Paragraph 8 of the Complaint.

9. On information and belief, Defendant Citizens Bank, N.A. is a New York entity maintaining its principal place of business at 833 Broadway, Albany, New York 12207.

**ANSWER:** Defendants admit that Citizens Bank N.A. is a national bank having its principal place of business at 833 Broadway, Albany, New York 12207, but deny the remaining allegations contained in Paragraph 9 of the Complaint.

10. On information and belief, Defendant Charter One Bank, N.A. is an Ohio entity maintaining its principal place of business at 1215 Superior Avenue, Cleveland, Ohio 44114.

**ANSWER:** Defendants admit the allegations contained in Paragraph 10 of the Complaint.

**JURISDICTION AND VENUE**

11. This is a civil action for patent infringement arising under the United States patent statutes, 35 U.S.C. § 1 *et seq*.

**ANSWER:** Defendants admit that this purports to be an action for patent infringement. The remaining allegations contained in Paragraph 11 of the Complaint state legal conclusions to which no response is required, but Defendants deny that Plaintiff is entitled to any relief against any of them.

12. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:** The allegations contained in Paragraph 12 of the Complaint state legal conclusions to which no response is required.

13. Upon information and belief, Defendants Citizens Financial Group, Inc., Citizens Bank, Citizens Bank New Hampshire, Citizens Bank of Connecticut, Citizens Bank of Massachusetts, Citizens Bank of Pennsylvania, Citizens Bank of Rhode Island, Citizens Bank, N.A., and Charter One Bank, N.A., (collectively, "Defendants") are

subject to this Court's personal jurisdiction because they do and have done substantial business in this judicial district, including: (i) operating infringing automated telephone call processing systems, including without limitation customer service systems that allow their customers, including customers within this State and within this District, to perform banking, mortgage, investment and/or other services over the telephone, including without limitation Citizens Bank Customer Service, Citizens Bank Business Phone Banking Service, Citizens Direct Mortgage, Charter One Customer Service, Charter One Online Banking, and Charter One Investment Services telephone systems; (ii) providing commercial and/or consumer banking services at bank branches within this State and within this District; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from services provided to individuals in this State and in this District.

**ANSWER:** Defendants admit that Citizens Financial Group, Inc. and Citizens Bank of Rhode Island do business in this judicial district, but deny the remaining allegations contained in Paragraph 13 of the Complaint.

14. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

**ANSWER:** Defendants admit that venue is proper as to Citizens Financial Group, Inc. and Citizens Bank of Rhode Island, but deny the remaining allegations contained in Paragraph 14 of the Complaint.

## BACKGROUND FACTS

15. Ronald A. Katz ("Mr. Katz"), founder of Katz Technology Licensing, is the sole inventor of each of the patents in suit. Mr. Katz has been widely recognized as

one of the most prolific and successful inventors of our time, and his inventions over the last forty-plus years have been utilized by literally millions of people.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and, therefore, deny same.

16. In 1961, Mr. Katz co-founded Telecredit Inc. ("Telecredit"), the first company to provide online, real-time credit authorization, allowing merchants to verify checks over the telephone. Further innovations from Telecredit include the first online, real-time, point-of-sale credit verification terminal, which enabled merchants to verify checks without requiring the assistance of a live operator, and the first device that used and updated magnetically-encoded cards in automated teller machines. Multiple patents issued from these innovations, including patents co-invented by Mr. Katz.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and, therefore, deny same.

17. Telecredit was eventually acquired by Equifax, and has now been spun off as Certegy, a public company traded on the New York Stock Exchange. Certegy continues to provide services in the credit and check verification field established by Mr. Katz and Telecredit.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and, therefore, deny same.

18. Mr. Katz's inventions have not been limited to telephonic check verification. Indeed, Mr. Katz is responsible for advancements in many fields of technology. Among his most prominent and well-known innovations are those in the field of interactive call processing. Mr. Katz's inventions in that field are directed to the integration of telephonic systems with computer databases and live operator call centers to provide interactive call processing services.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and, therefore, deny same.

19. The first of Mr. Katz's interactive call processing patents issued on December 20, 1988. More than fifty U.S. patents have issued to Mr. Katz for his inventions in the interactive call processing field, including each of the patents-in-suit.

**ANSWER:** Defendants admit that a patent naming Katz as an inventor issued on December 20, 1988 and that more than fifty U.S. Patents have issued naming Katz as an inventor, but otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19 of the Complaint and, therefore, deny same.

20. In 1988, Mr. Katz partnered with American Express to establish FDR Interactive Technologies, later renamed Call Interactive, to provide interactive call processing services based on Mr. Katz's inventions. The American Express business unit involved in this joint venture later became known as First Data.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and, therefore, deny same.

21. Early clients of Call Interactive included *The New York Times*, ABC's *Monday Night Football*, KABC Radio, CBS News, and Beatrice Foods (Hunt-Wesson division).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and, therefore, deny same.

22. Many of these clients utilized Call Interactive technology for high-profile events. For example, CBS News hired Call Interactive to operate an interactive, real-time telephone poll to gauge viewer reaction to President George H.W. Bush's 1992 State of the Union address.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint and, therefore, deny same.

23. Mr. Katz sold his interest in Call Interactive to American Express in 1989 but continued to provide advisory services to Call Interactive until 1992. American Express later spun off the First Data business unit into a separate corporation, and with that new entity went Mr. Katz's interactive call processing patents and the Call Interactive call processing business. The former Call Interactive, now known as First Data Voice Services, continues to provide call processing solutions today.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and, therefore, deny same.

24. In 1994, Mr. Katz formed Katz Technology Licensing, which acquired the rights to the entire interactive call processing patent portfolio, including the rights to each of the patents-in-suit, from First Data, the owner of all of the Katz interactive call processing patents at that time.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and, therefore, deny same.

25. The marketplace has clearly recognized the value of Mr. Katz's inventions. Indeed, over 150 companies have licensed the patents-in-suit. Licensees include IBM, Hewlett-Packard, Bank of America, JPMorgan Chase, Wells Fargo, HSBC, Verizon, Sprint, Microsoft, Delta Airlines, Merck, Sears, and Home Shopping Network. These licenses and others acknowledge the applicability of the patents-in-suit to multiple fields of use, including but not limited to financial services call processing, automated securities transactions, automated credit card authorization services, automated wireless telecommunication services and support, automated health care services, and product and service support.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint and, therefore, deny same.

26. Each of the defendants employs the inventions of certain of the patents-in-suit. Katz Technology Licensing, through its licensing arm A2D, L.P., has repeatedly attempted to engage each defendant in licensing negotiations, but to date, none of the defendants have agreed to take a license to any of the patents-in-suit.

**ANSWER:** Defendants deny the allegations contained in Paragraph 26 of the Complaint.

## THE PATENTS-IN-SUIT

27. On December 20, 1988, the United States Patent and Trademark Office duly and legally issued United States Patent No. 4,792,968 ("the '968 Patent"), entitled "Statistical Analysis System For Use With Public Communication Facility," to Ronald A. Katz, sole inventor. The '968 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 4,792,968 was issued and named Katz as an inventor. Defendants further admit that the '968 Patent is expired. Defendants specifically deny that the '968 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 27 of the Complaint.

28. On May 29, 1990, the United States Patent and Trademark Office duly and legally issued United States Patent No. 4,930,150 ("the '150 Patent"), entitled "Telephonic Interface Control System," to Ronald A. Katz, sole inventor. The '150 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 4,930,150 was issued and named Katz as an inventor. Defendants further admit that the '150 Patent is expired. Defendants specifically deny that the '150 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 28 of the Complaint.

29. On October 5, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,251,252 ("the '252 Patent"), entitled "Telephone Interface Call Processing System With Call Selectivity," to Ronald A. Katz, sole inventor.

**ANSWER:** Defendants admit that United States Patent No. 5,251,252 was issued and named Katz as an inventor. Defendants specifically deny that the '252 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 29 of the Complaint.

30. On October 19, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,255,309 ("the '309 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '309 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 5,255,309 was issued and named Katz as an inventor. Defendants further admit that the '309 Patent is expired. Defendants specifically deny that the '309 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 30 of the Complaint.

31. On November 2, 1993, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,259,023 ("the '023 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '023 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 5,259,023 was issued and named Katz as an inventor. Defendants further admit that the '023 Patent is

expired. Defendants specifically deny that the '023 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 31 of the Complaint.

32. On September 27, 1994, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,351,285 ("the '285 Patent"), entitled "Multiple Format Telephonic Interface Control System," to Ronald A. Katz, sole inventor. The '285 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 5,351,285 was issued and named Katz as an inventor. Defendants further admit that the '285 Patent is expired. Defendants specifically deny that the '285 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 32 of the Complaint.

33. On October 1, 1996, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,561,707 ("the '707 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '707 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 5,561,707 was issued and named Katz as an inventor. Defendants further admit that the '707 Patent is expired. Defendants specifically deny that the '707 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 33 of the Complaint.

34. On November 4, 1997, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,684,863 ("the '863 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '863 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 5,684,863 was issued and named Katz as an inventor. Defendants further admit that the '863 Patent is expired. Defendants specifically deny that the '863 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 34 of the Complaint.

35. On September 29, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,815,551 ("the '551 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '551 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 5,815,551 was issued and named Katz as an inventor. Defendants further admit that the '551 Patent is expired. Defendants specifically deny that the '551 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 35 of the Complaint.

36. On October 27, 1998, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,828,734 ("the '734 Patent"), entitled "Telephone Interface Call Processing System With Call Selectivity," to Ronald A. Katz, sole inventor.

**ANSWER:** Defendants admit that United States Patent No. 5,828,734 was issued and named Katz as an inventor. Defendants specifically deny that the '734 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 36 of the Complaint.

37. On June 29, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,917,893 ("the '893 Patent"), entitled "Multiple

Format Telephonic Interface Control System," to Ronald A. Katz, sole inventor. The '893 Patent expired on December 20, 2005

**ANSWER:** Defendants admit that United States Patent No. 5,917,893 was issued and named Katz as an inventor. Defendants further admit that the '893 Patent is expired. Defendants specifically deny that the '893 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 37 of the Complaint.

38. On October 26, 1999, the United States Patent and Trademark Office duly and legally issued United States Patent No. 5,974,120 ("the '120 Patent"), entitled "Telephone Interface Call Processing System with Call Selectivity," to Ronald A. Katz, sole inventor.

**ANSWER:** Defendants admit that United States Patent No. 5,974,120 was issued and named Katz as an inventor. Defendants specifically deny that the '120 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 38 of the Complaint.

39. On November 14, 2000, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,148,065 ("the '065 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '065 Patent expired on July 10, 2005.

**ANSWER:** Defendants admit that United States Patent No. 6,148,065 was issued and named Katz as an inventor. Defendants further admit that the '065 Patent is expired. Defendants specifically deny that the '065 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 39 of the Complaint.

40. On February 19, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,349,134 ("the '134 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '134 Patent expired on December 20, 2005.

**ANSWER:** Defendants admit that United States Patent No. 6,349,134 was issued and named Katz as an inventor. Defendants further admit that the '134 Patent is expired. Defendants specifically deny that the '134 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 40 of the Complaint.

41. On August 13, 2002, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,434,223 ("the '223 Patent"), entitled "Telephone Interface Call Processing System With Call Selectivity," to Ronald A. Katz, sole inventor. The '223 Patent expired on July 10, 2005.

**ANSWER:** Defendants admit that United States Patent No. 6,434,223 was issued and named Katz as an inventor. Defendants further admit that the '223 Patent is expired. Defendants specifically deny that the '223 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 41 of the Complaint.

42. On January 13, 2004, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,678,360 ("the '360 Patent"), entitled "Telephonic-Interface Statistical Analysis System," to Ronald A. Katz, sole inventor. The '360 Patent expired on July 10, 2005.

**ANSWER:** Defendants admit that United States Patent No. 6,678,360 was issued and named Katz as an inventor. Defendants further admit that the '360 Patent is

expired. Defendants specifically deny that the '360 Patent is valid or enforceable and deny the remaining allegations contained in Paragraph 42 of the Complaint.

**COUNT 1**
**(PATENT INFRINGEMENT)**

43. Katz Technology Licensing realleges and incorporates by reference paragraphs 1-42 of this Complaint as if fully set forth herein.

**ANSWER:** Defendants incorporate their responses to Paragraphs 1 through 42 as if fully set forth herein.

44. Katz Technology Licensing is the sole holder of the entire right, title, and interest in the '968, '150, '252, '309, '023, '285, '707, '863, '551, '734, '893, '120, '065, '134, '223 and '360 Patents.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 of the Complaint and, therefore, deny same.

45. Upon information and belief, the Defendants operate automated telephone systems, including without limitation customer service systems that allow their customers to perform banking, mortgage, investment, and/or other services over the telephone, including without limitation Citizens Bank Customer Service, Citizens Bank Business Phone Banking Service, Citizens Direct Mortgage, Charter One Customer Service, Charter One Online Banking, and Charter One Investment Services telephone systems.

**ANSWER:** Certain Defendants admit that they operate automated telephone systems that allow customers to perform certain services over the telephone, but all Defendants specifically deny that any of those systems infringe any patents-in-suit.

46. The Defendants have directly and contributorily infringed, and induced others to infringe, one or more claims of each of the patents identified in paragraph 44 of this Complaint by making, using, offering to sell, and/or selling within the United States automated telephone systems, including without limitation customer service systems that allow their customers to perform banking, mortgage, investment and/or other services over the telephone, including without limitation Citizens Bank Customer Service, Citizens Bank Business Phone Banking Service, Citizens Direct Mortgage, Charter One Customer Service, Charter One Online Banking, and Charter One Investment Services telephone systems.

**ANSWER:** Defendants deny the allegations contained in Paragraph 46 of the Complaint.

47. The Defendants continue to infringe, contributorily infringe, and induce others to infringe the '252, '734 and '120 Patents.

**ANSWER:** Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48. The Defendants' infringement of the patents identified in paragraph 44 has been willful.

**ANSWER:** Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49. Katz Technology Licensing has been, and continues to be, damaged and irreparably harmed by the Defendants' infringement, which will continue unless the Defendants are enjoined by this Court.

**ANSWER:** Defendants deny the allegations contained in Paragraph 49 of the Complaint.

Defendants deny that Plaintiff is entitled to the Relief sought in the Wherefore clause following Paragraph 49 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

### First Defense - Failure to State Claim

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense – § 102 Invalidity

Upon information and belief the '968, '150, '252, '309, '023, '285, '707, '863, '551, '734, '893, '120, '065, '134, '223 and '360 Patents (the "patents-in-suit") do not meet the conditions specified in 35 U.S.C. § 102 and are invalid, void and unenforceable against Defendants for one or more of reasons (1) through (7) listed below:

> (1) The invention claimed therein was known or used by others in this country before the date of the alleged invention thereof by the applicant [§ 102(a)];
>
> (2) The invention claimed therein was patented or described in a printed publication in this or a foreign country before the date of the invention thereof by the applicant [§ 102(a)];
>
> (3) The invention claimed therein was patented or described in a printed publication in this or a foreign country more than one year prior to the date of the application for patent in the United States [§ 102(b)];
>
> (4) The invention claimed therein was in public use or on sale in this country more than one year prior to the date of the application for patent in the United States [§ 102(b)];
>
> (5) The invention claimed therein was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant [§ 102(e)];
>
> (6) The applicant did not himself invent the subject matter claimed in the patent [§ 102(f)];
>
> (7) The invention claimed therein was made in this country by another who had not abandoned, suppressed or concealed it prior to the applicant's invention thereof [§ 102(g)].

**Third Defense – § 103 Invalidity**

The patents-in-suit do not meet the conditions specified in 35 U.S.C. § 103 and are invalid, void and unenforceable against Defendants because the differences between the patented subject matter and the prior art are such that the subject matter as a whole was obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

**Fourth Defense – § 112 Invalidity**

The patents-in-suit do not meet one or more of the conditions specified in 35 U.S.C. § 112 and are invalid, void and unenforceable against Defendants for either or both of the following reasons:

> (1) The specification thereof is incomplete, vague and indefinite and does not contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains or with which it is most nearly connected, to make and use the same, and does not set forth the best mode contemplated by the inventor of carrying out his invention;
>
> (2) The claims of the patent are vague and indefinite and fail to particularly point out and distinctly claim the subject matter of the alleged invention.

**Fifth Defense – Unenforceability Due to Patent Misuse**

Plaintiff's claims against Defendants are barred in whole or in part because Plaintiff has engaged in patent misuse by initiating this sham litigation and by attempting to enforce the patents-in-suit in bad faith.

**Sixth Defense – Statute of Limitations**

Each of Plaintiff's claims against Defendants is barred, in whole or in part, under the applicable statute of limitations set forth in 35 U.S.C. § 286 to the extent Defendants' alleged infringement occurred more than six years prior to Plaintiff filing this action.

**Seventh Defense – Failure to Provide Notice**

Plaintiff's claims for damages against Defendants are barred in whole or in part by 35 U.S.C. § 287(a) for any alleged infringement that occurred prior to Plaintiff giving actual notice of the patents-in-suit to Defendants.

**Eighth Defense – Estoppel**

Each of Plaintiff's claims against Defendants is barred, in whole or in part, by the doctrine of estoppel.

**Ninth Defense – Laches**

Each of Plaintiff's claims against Defendants is barred, in whole or in part, by laches.

**Tenth Defense – Prosecution Laches**

Plaintiff's claims against Defendants are barred, in whole or in part, by the doctrine of prosecution laches because of Plaintiff's unreasonable and unexplained delays in the prosecution of the patents-in-suit.

**Eleventh Defense – Implied License/Patent Exhaustion**

Plaintiff's claims against Defendants are barred in whole or in part by express or implied license and/or by the doctrine of patent exhaustion.

**Twelfth Defense – Inequitable Conduct**

The patents-in-suit are unenforceable, in whole or in part, due to inequitable conduct committed by Plaintiff, prior assignees of some of the patents-in-suit, the named

inventor Ronald A. Katz, and/or their attorneys and appointed representatives (collectively "Katz") before the United States Patent and Trademark Office (the "PTO") during the prosecution of the patents-in-suit and/or related patents and patent applications. Specifically, Katz violated the duty of candor with the intent to deceive the PTO by, among other things: (1) failing to disclose prior art to the PTO that Katz knew or should have known was material to the prosecution of the patents-in-suit and/or related patents and patent applications; and (2) making false statements as to the priority dates to which claims of pending applications were entitled to remove as prior art references which the PTO had relied on to reject claims in Katz's pending applications.

## PRAYER FOR RELIEF

**WHEREFORE,** Defendants respectfully request that the Court dismiss the Complaint with prejudice; enter judgment in Defendants' favor on all Plaintiff's claims; find this case exceptional and award Defendants their costs and attorneys' fees pursuant to 35 U.S.C. § 285; and such other further relief as this Court deems appropriate.

## COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs Citizens Financial Group, Inc., Citizens Bank, Citizens Bank New Hampshire, Citizens Bank of Connecticut, Citizens Bank of Massachusetts, Citizens Bank of Pennsylvania, Citizens Bank of Rhode Island, Citizens Bank, N.A., and Charter One Bank, N.A. assert the following counterclaims against Plaintiff/Counterclaim Defendant Ronald A. Katz Technology Licensing, L.P.:

## THE PARTIES

1. Citizens Financial Group, Inc. is a Delaware entity having its principal place of business at One Citizens Plaza, Providence, Rhode Island 02903.

2. Citizens Bank is a Delaware entity having its principal place of business at 919 North Market Street, Wilmington, Delaware 19801.

3. Citizens Bank New Hampshire is a New Hampshire entity having its principal place of business at 875 Elm Street, Manchester, New Hampshire 03101.

4. Citizens Bank of Connecticut is a Connecticut entity having its principal place of business at 63 Eugene O'Neill Drive, New London, Connecticut 06320.

5. Citizens Bank of Massachusetts is a Massachusetts entity having its principal place of business at 28 State Street, Boston, Massachusetts 02109.

6. Citizens Bank of Pennsylvania is a Pennsylvania entity having its principal place of business at 2001 Market Street, Philadelphia, Pennsylvania 19103.

7. Citizens Bank of Rhode Island is Rhode Island entity having its principal place of business at One Citizens Plaza, Providence, Rhode Island 02903.

8. Citizens Bank, N.A. is a national bank having its principal place of business at 833 Broadway, Albany, New York 12207.

9. Charter One Bank, N.A. is an Ohio entity having its principal place of business at 1215 Superior Avenue, Cleveland, Ohio 44114.

10. On information and belief, Counterclaim Defendant Ronald A. Katz Technology Licensing, L.P. is a limited partnership organized under the laws of the State of California, and having a principal place of business at 9220 Sunset Blvd. 315, Los Angeles, California 90069.

## JURISDICTION AND VENUE

11. These counterclaims arise under federal law and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 2202 and the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

13. As a result of the actions and statements of Counterclaim Defendant, an actual controversy now exists between the parties regarding the invalidity and unenforceability of U.S. Patent Nos. 4,792,968 (the "'968 patent"); 4,930,150 (the "'150 patent"); 5,251,252 (the "'252 patent"); 5,255,309 (the "'309 patent"); 5,259,023 (the "'023 patent"); 5,351,285 (the "'285 patent"); 5,561,707 (the "'707 patent"); 5,684,863 (the "'863 patent"); 5,815,551 (the "'551 patent"); and 5,828,734 (the "'734 patent"); 5,917,893 (the "'893 patent"); 5,974,120 (the "'120 patent"); 6,148,065 (the "'065 patent); 6,349,134 (the "'134 patent"); 6,434,223 (the "'223 patent"), and 6,678,360 (the "'360 patent"), collectively referred to as the "patents-in-suit."

## COUNT I
## (DECLARATION OF INVALIDITY)

14. Counterclaim Plaintiffs reallege and incorporate by reference Paragraphs 1 through 13 as if fully incorporated herein.

15. The patents-in-suit are invalid or unenforceable, or both, for failure to satisfy one ore more conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

**COUNT II**
**(DECLARATION OF UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT)**

16. Counterclaim Plaintiffs reallege and incorporate by reference Paragraphs 1 through 15 as if fully incorporated herein.

17. The patents-in-suit are unenforceable in whole or in part due to inequitable conduct by Plaintiff/Counterclaim Defendant, prior assignees of some of the patents-in-suit, the named inventor, Ronald A. Katz, and/or their attorneys and appointed representatives (collectively "Katz") before the United States Patent and Trademark Office (the "PTO") during the prosecution of the patents-in-suit and/or related patents and patent applications.

18. The patents-in-suit include the '968 patent, the '150 patent, the '252 patent the '309 patent, the '023 patent, the '285 patent, the '707 patent, the '863 patent, the '551 patent, the '734 patent, the '893 patent, the '120 patent, the '065 patent, the '134 patent, the '223 patent, and the '360 patent.

19. In addition to the patents-in-suit, the following related patents, to which at least some of the patents-in-suit claim priority, are relevant to determining the unenforceability of the patents-in-suit on Katz's inequitable conduct: U.S. Patent Nos. 4,845,739 (the "'739 patent"), 5,048,075 (the "'075 patent"), 5,365,575 (the "'575 patent"), 6,016,344 (the "'344 patent"), 5,224,153 (the "'153 patent"), 5,359,645 (the "'645 patent"), 5,073,929 (the "'929 patent"), 5,128,984 (the "'984 patent"), 5,787,156 (the "'156 patent"), 5,835,576 (the "'576 patent"), 5,898,762 (the "'762 patent"), 6,044,135 (the "'135 patent"), and 6,335,965 (the "'965 patent"). Further, relevant related patent applications include: U.S. Patent Application Nos. 06/753,299 (the "'299

application"), 07/342,506 (the "'506 application"), and 07/640,337 (the "'337 application").

20. Because Katz failed to comply with the duty of candor to the PTO during the prosecution of the applications that led to the patents-in-suit, related applications and applications upon which priority is claimed and that also contain related and material claimed subject matter, Katz engaged in inequitable conduct rendering the patents-in-suit unenforceable.

21. Upon information and belief, Katz violated the duty of candor with the intent to deceive the PTO.

**Withholding of Material Information**

**The Periphonics References**

22. Upon information and belief, Katz intentionally withheld from the PTO highly relevant and material prior art by the Periphonics Corporation ("Periphonics") in order to obtain claims to which Katz was not entitled.

23. Upon information and belief, in April of 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California (the "West case"), materials bearing Bates numbers W72807-W73756 (the "West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green (the "Nilsson firm").

24. Upon information and belief, the Nilsson firm was involved in prosecuting many of Katz's patent applications, including those which would later issue as the patents-in-suit.

25. Upon information and belief, included in the West materials were a number of Periphonics references, including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 (the "Bank-From-Home reference"); and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 (the "VoicePac reference").

26. Upon information and belief, both the Bank-From-Home reference and VoicePac reference are highly relevant and material to many claims of the patents-in-suit. The Bank-From-Home reference describes such limitations of claims of the patents-in-suit as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system. The VoicePac reference describes such limitations of claims of the patents-in-suit as interfacing callers to the system and transferring callers to a customer service representative.

27. Upon information and belief, during the prosecution of U.S. Patent Application No. 08/306,456, which ultimately issued as U.S. Patent No. 6,335,965, Katz stated: "During litigation [of the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." Paper no. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

28. Upon information and belief, Katz made the same statements in at least those applications that later issued as the '285 patent, '893 patent, and '707 patent.

29. Upon information and belief, at least the applications for the '863 and '551 patents refer the examiner to the references disclosed during the prosecution of the '707 patent.

30. Upon information and belief, while other references in the West materials were submitted to the PTO during prosecution of the '707, '285, '893, '863, and '551 patents, the Bank-From-Home and VoicePac references were withheld despite knowledge of their materiality.

31. Upon information and belief, at least the '134, '065, and '360 patents have specifications substantially identical to those of the '707, '863, and '551 patents, and contain claims with subject matter that was at issue during the prosecution of the '707, '863, and '551 patents.

32. Katz's failure to disclose this material prior art during the prosecution of the '707, '285, '893, '863, and '551 patents was a violation of the duty of candor owed to the PTO and constitutes inequitable conduct. Thus, at least the '707, '285, '893, '863, and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during prosecution of their respective applications.

33. Other patents-in-suit are directly related to these patents and thus are rendered unenforceable through infectious unenforceability. For example, the '134, '065, and '360 patents have specifications substantially identical to those of the '707, '863, and '551 patents. The '134, '065, and '360 patents contain claims with subject matter that

includes subject matter that was at issue during the prosecution of the '707, '863, and '551 patents.

34. Thus, Katz's inequitable conduct renders each of the '707, '285, '893, '863, '551, '134, '065, and '360 patents unenforceable.

**The Barger Reference**

35. Katz failed to disclose U.S. Patent No. 4, 071,698 to Barger, Jr. et al. (the "Barger patent") to the PTO during the prosecution of many of the patents-in-suit and other related applications. The patents-in-suit claim priority to some of these related patents and applications.

36. The Barger patent was filed on January 10, 1977, eight years before Katz's first application.

37. The Barger patent teaches an interactive voice system for marketing merchandise and is material because it discloses many features relevant to Katz's claims in many of the patents-in-suit. These include the storing of data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

38. The Barger patent also discloses an automated interactive voice system for marketing merchandise, such as audio recordings. A customer can select and listen to an audio sample and can arrange payment by credit card or other means. The system can maintain a complete record of all transactions-including requests for demonstrations played by each customer in order to maintain current inventory records and determine trends. The system can use the transaction history to determine whether a customer is a "free loader" and can limit the customer's access to the system accordingly.

39. The system disclosed in the Barger patent is also capable of assigning a caller to an operator who can obtain information from the customer and enter the information into a database. When the customer requests a specific demonstration, the operator enters the appropriate code into the system and the audio sample is played to the customer. Upon completion of the demonstration, the system can return the customer to a live operator, who can take an order or provide another audio sample for the caller to listen to.

40. Because the Barger patent discloses many of the central features claimed by Katz, it would have been material to the PTO in deciding whether to allow the claims of the asserted patents and related patents and/or applications. For example, the Barger patent discloses storing data entered by a caller in a record, limiting the number of times a caller can access the system, and entering credit card information.

41. Upon information and belief, the materiality of the Barger patent to the asserted patents was confirmed by the PTO Board of Patent Appeals and Interferences, which in Appeal No. 94-0834, Application Serial No. 07/640,337 (Feb. 17, 1998) affirmed a patent examiner's rejection of certain of Katz's pending claims based in part on the disclosure of the Barger patent.

42. Upon information and belief, the materiality of the Barger patent to the asserted patents was further confirmed by the PTO in Reexam Control No. 90/008,057 (Reexamination of the '285 patent). In an order granting reexamination of the '285 patent, dated July 27, 2006, the PTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

43. Upon information and belief, the materiality of the Barger patent to the asserted patents was further confirmed by the PTO in Reexam Control No. 90/008,039 (Reexamination of the '551 patent). In an order granting reexamination of the '551 patent, dated July 21, 2006, the PTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

44. Upon information and belief, the materiality of the Barger patent to the asserted patents were further confirmed by the PTO in Reexam Control No. 90/008,051 (Reexamination of the '223 patent). In an order granting reexamination of the '223 patent, dated July 21, 2006, the PTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

45. Upon information and belief, the materiality of the Barger patent to the asserted patents were further confirmed by the PTO in Reexam Control No. 90/008,095 (Reexamination of the '863 patent). In order granting reexamination of the '863 patent, dated September 22, 2006, the PTO found that a substantial new question of patentability existed at least in part in view of the Barger patent.

46. Upon information and belief, Katz became aware of the Barger patent and its materiality in December 1988, when the European Patent Office sent Katz's European patent attorney a search report for one of Katz's corresponding European patent applications. This search report identified the Barger patent as being "particularly relevant" to Katz's application.

47. Upon information and belief, Katz considered the Barger patent so significant that Katz ultimately acquired the patent by assignment through First Data

Resources Inc. ("First Data") on November 2, 1990 and by subsequent assignment to Katz on September 17, 1994.

48. Despite its materiality and Katz's knowledge of its existence, Katz failed to disclose the Barger patent to the PTO during the prosecution of at least the '150, and '285 patents, as well as during the substantive prosecution of at least the '893, '863, '551, '065, '360, '734, '134, '120, and '223 patents.

49. Upon information and belief, Katz withheld the disclosure of the Barger patent with intent to deceive the PTO, thereby committing inequitable conduct and rendering at least the '984, '150, '285, '893, '863, '551, '065, '360, '734, '134, '120, and '223 patents unenforceable.

**The DeBruyn Reference**

50. Upon information and belief, Katz failed to disclose European Patent Specification No. 0032410 to DeBruyn (the "DeBruyn patent"), which corresponds to Canadian Patent No. 1162336 (the "Canadian DeBruyn patent"), to the PTO during the prosecution of many of the patents-in-suit and other related applications. The patents-in-suit claim priority to some of these related patents and applications.

51. The DeBruyn patent was published July 22, 1981 and discloses an interactive voice system for implementing a lottery.

52. The DeBruyn patent is material to the asserted patents. The DeBruyn patent discloses an interactive voice system for implementing a lottery. The system receives a call from a prospective player along with the player's telephone number. Both French and English speaking players are accommodated by the same system by receiving calls dialed to different telephone numbers. A caller's access to the system

may be restricted based on various criteria such as the number times a caller accesses the system per week or the amount wagered. DeBruyn also discloses issuing secret codes to prospective players that can also be entered into the system before access is granted to the caller.

53. Because the DeBruyn patent discloses many features relevant to the claims in the asserted patents and/or related patents and applications, it would have been material to the PTO in deciding whether to allow the claims of the asserted patents. For example, the DeBruyn patent discloses receiving a caller's telephone number automatically from the telephone network, prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data processing caller-entered data and qualifying callers for limited access or limits on use. The DeBruyn patent also discloses qualifying callers based on the caller's telephone number.

54. Upon information and belief, the Canadian DeBruyn Patent has been relied upon by the Director of the PTO in ordering the reexamination of several of Katz's patents, including the '707 and '309 patents. With respect to the '309 patent, for example, upon information and belief, the Director stated: "In view of the teachings of [the DeBruyn Canadian Patent], a substantial new question of patentability is raised as to claim 23 of the ['309 patent], and a reexamination of all the patent claims as to the substantial new question of patentability is appropriate." Reexamination Control No. 90/006,976, Director Initiated Order For Reexamination mailed March 26, 2004, at 6. Upon information and belief, the Director has similarly determined that the DeBruyn patent anticipates, for example, at least one claim in each of the '023 (which is related to

one or more of the asserted patents) and '707 patents under 35 U.S.C. § 102. Like most of the asserted patents, each of the '707, '309 and '023 patents, on its face, is asserted by Katz to be a continuation of the '739 patent.

55. Further, a patent examiner at the PTO has relied on the DeBruyn Canadian patent in rejecting claims 31, 36, 38-40, 57, and 58 under 35 U.S.C. § 103. Reexamination Control Nos. 90/006,976, 90/007,092, and 90/007,884 (Merged Proceedings), Office Action mailed September 29, 2006, at 31-64.

56. Upon information and belief, Katz became aware of the DeBruyn patent and its materiality in December 1988, when the European Patent Office sent Katz's European patent attorney a search report for one of Katz's corresponding European patent applications, the same search report that disclosed the Barger patent. This search report also identified the DeBruyn patent as being "particularly relevant" to Katz's application.

57. Upon information and belief, despite its materiality and Katz's knowledge of its existence, Katz failed to disclose the DeBruyn patent to the PTO during the prosecution of at least the '150, '252, and '863 patents, as well as during the substantive prosecution of at least the '285, '893, '551, '065, '360, '734, '120, and '223 patents.

58. Upon information and belief, Katz withheld the disclosure of the DeBruyn patent with an intent to deceive the PTO, thereby committing inequitable conduct and rendering at least the '150, '252, '863, '285, '893, '551, '065, '360, '734, '120, and '223 patents unenforceable.

**The Katz PCT Reference**

59. Katz failed to disclose the publication of Katz's own PCT application WO 87/00375 ("the '375 application") during the prosecution of U.S. Patent No. 4,845,739 ("the '739 patent").

60. The '375 application teaches a statistical analysis system for use in conjunction with a public communication facility. When the system receives a call, a voice generator prompts the caller for information such as a key number or the caller's telephone number. If available, the caller's telephone number may be taken directly from the communication facility. After qualifying the caller using the number received, the system retrieves polling-type data from the callers that is combined with stored data to isolate a select subset of callers. Upon information and belief, the '375 application has the same specification as the initial '299 application Katz filed to which all other of the asserted patents claim priority and discloses much of the same subject matter incorporated in subsequent patents claiming priority to it.

61. The '375 application was published on January 15, 1987 and is therefore considered prior art for any claims with a filing date more than a year after the publication date.

62. The published '375 application constitutes prior art to all claims that incorporated any new subject matter added in the application for the '739 patent, which was filed on May 16, 1988.

63. Upon information and belief, the published '375 application would have been material to an examiner in determining what claims, if any, Katz might be entitled to in the '739 patent. The published '375 application would have been relevant to many

of the basic elements claimed in the '739 patent such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

64. Despite knowledge of the '375 patent and its materiality, Katz did not disclose the '375 application to the patent examiner during the prosecution of the '739 patent.

65. Katz's failure to disclose this material prior art was a violation of the duty of candor owed to the PTO and constitutes inequitable conduct.

66. Many of the patents-in-suit contain claims with subject matter that was at issue during the '739 patent prosecution and to which the '375 application would have been relevant are thus are rendered unenforceable through infectious unenforceability.

67. For example, the '739 patent is related to the '893, '863, '551, '065, '360, and '134 patents, in that Katz has disclaimed for each of the '893, '863, '309, '023, '551, '065, '360, and '134 patents any patent term subsequent to the patent term of the '739 patent.

68. Due to the inequitable conduct that occurred during the prosecution of the '739 patent, at least the '739, '893, '863, '309, '023, '551, '065, '360, and '134 patents are rendered unenforceable.

**False and Misleading Statements**

69. Upon information and belief, Katz made false and misleading statements to the PTO regarding the priority dates to which the claims of pending applications were entitled.

70. Upon information and belief, Katz made these false and misleading statements with the intent to prevent certain references from being considered prior art to Katz's pending applications.

**Statements Regarding International Application 87/00375**

71. Upon information and belief, during prosecution of the '984 patent, which is the grandparent of the '734 patent, Katz falsely stated that "the international application [87/00375] is not properly a reference against the present case."

72. Upon information and belief, this assertion is false because international application 87/00375 was filed more than a year prior to the filing of the '734 patent. Contrary to Katz's statement, international application 87/00375 is a prior art reference to any new matter claimed in the '734 patent, which was based on a continuation-in-part application.

73. Upon information and belief, Katz's statement was knowingly false and was made with the intent to deceive the PTO into issuing patent claims of a scope beyond any to which Katz was entitled in the '984 patent, and constituted inequitable conduct.

74. The '120, '734 and '223 patents are closely related to the '984 patent and thus are rendered unenforceable though infectious unenforceability. The '120, '734 and '223 share a substantially identical specification with the '094 patent and claim priority to the '984 patent. Due to the interrelatedness of these patents, Katz has disclaimed for the '120, '734 and '223 patents any patent term subsequent to the patent term of the '984 patent. Thus, the conduct during prosecution of the '984 patent also renders the '120, '734 and '223 unenforceable.

**Statements Regarding the Brown Patent**

75. Upon information and belief, Katz made false and misleading statements during the prosecution of the '734 patent with respect to U.S. Patent No. 4,972, 461, issued to Brown (the "Brown patent").

76. Upon information and belief, during prosecution of the '734 patent, Katz identified the Brown Patent to the PTO, but stated in an amendment "the Brown patent has an issue date of November 20, 1990, and a filing date of September 20, 1989. It should be noted that the present application ultimately claims priority from Applicant's parent patent U.S. Patent No. 4,930,150, which predates the Brown patent with respect to disclosure of alternate access possibilities (e.g., "800" or "900")."

77. Upon information and belief, the referenced parent patent, the '150 patent, does not contain any disclosure of the multiple call modes as claimed in the '734 patent, and, therefore, could not be used to predate the Brown patent for that claimed subject matter in the '734 patent.

78. Upon information and belief, therefore, Katz knowingly, falsely claimed priority to parent application in order to antedate the Brown patent.

79. The inequitable conduct committed by Katz during the prosecution of the '734 patent renders at least the '734 patent unenforceable, as well as the '120 and '223 patents, which claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims in the '734 patent.

**Statements Regarding the Hester Reference**

80. Upon information and belief, during prosecution of the '734 patent, Katz made a false and misleading statement about a prior art reference by Hester (the "Hester reference").

81. Katz stated to the patent examiner that "the reference by Hester bears a date of 1985, apparently 'September.' In that regard, it is noteworthy that the present application is related to a parent case filed July 10, 1985."

82. Upon information and belief, Katz's statement is false because the parent application that Katz referenced does not disclose toll free calls and does not disclose 900 "pay-per-call" modes, and, therefore, none of the claims in the '734 patent reciting such limitations is entitled to claim priority to that parent application's filing date.

83. Upon information and belief, Katz knowingly and falsely claimed priority to parent application to antedate the Hester reference.

84. The inequitable conduct committed by Katz during the prosecution of the '734 patent with regards to the Hester reference renders at least the '734 patent unenforceable.

**Statements Regarding the Kaplan Patent**

85. Upon information and belief, during prosecution of the '734 patent Katz also made false statements about his pending application with respect to U.S. Patent 4,797,913 to Kaplan (the "Kaplan patent").

86. Upon information and belief, the Kaplan patent was filed on August 4, 1987 and is prior art to the '734 patent.

87. Katz falsely stated that "the present application is entitled to a priority date earlier than that of the subject reference."

88. Upon information and belief, Katz's statement is false because at the time it was made there were claims in Katz's application that contained new subject matter, and were therefore not entitled to an earlier priority date.

89. Katz violated the duty of good faith and candor by making the foregoing false and misleading statements.

90. Upon information and belief, these false and misleading statements were made to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '734, '120, and '223 patents unenforceable.

91. Upon information and belief, Katz's inequitable conduct was repeated during the prosecution of other applications leading to the patents-in-suit and infected either directly or indirectly all of the applications, and thereby rendered all of the patents-in-suit unenforceable in their entirety.

**Statements Regarding the Daudelin Patents**

92. Upon information and belief, at least three patents to Daudelin, including the Daudelin '955 patent and U.S. Patent Nos. 4,797,910 ("the Daudelin '910 patent") and 4,922,519 ("the Daudelin '519 patent"), collectively "the Daudelin patents", were cited during the prosecution of certain of the asserted patents and related patents. Upon information and belief, the specifications for the Daudelin '910 and the '519 patents are substantially similar, and all three disclose aspects pertaining to DNIS (Dialed Number Identification Service) functionality.

93. Upon information and belief, Katz repeatedly took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times during the prosecution of the asserted patents and failed to inform the different patent examiners of Katz's inconsistent positions.

94. During prosecution of the '734 patent, Katz labeled various prior art references as either "D," "A," or "D/A" so as to indicate whether or not the reference was "pertinent to DNIS capabilities," "pertinent to ANI capabilities," or both, respectively. During the prosecution of the '734 patent, Katz did not label the Daudelin '910 patent as either "D," "A," or "D/A." By failing to label the Daudelin '910 patent as either "D," "A," or "D/A," Katz, thereby, characterized the Daudelin '910 patent as not being pertinent to either DNIS or ANI capabilities.

95. As part of the prosecution of the '551 patent, Katz took a position that was contrary to the position Katz took as part of the prosecution of the '734 patent. Specifically, as part of the prosecution of the '551 patent, Katz labeled the Daudelin '910 patent with a "D." Katz, therefore, took the position, part of the prosecution of the '551 patent, that the Daudelin '910 patent was pertinent to DNIS capabilities.

96. Subsequently, however, as part of the prosecution of the '360 patent, Katz took a position that was contrary to that taken as part of the prosecution of the '551 patent. Specifically, as part of the prosecution of the '360 patent, Katz asserted that " . . . Daudelin does not teach DNIS . . . ."

97. Upon information and belief, Katz took inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failed to inform the different patent examiners of Katz's prior inconsistent positions with the intent

to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '551, '734 and '360 patents, which are included in the asserted patents, unenforceable.

98. At least, the '120, '065, and '223 patents all claim priority to one or more of the '551, '734, and '360 patents and claim subject matter related to these patent to which the Daudelin patents are material. Accordingly, at least the '120, '065, and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '551, '734, and '360 patents.

99. Accordingly, at least the '551, '734, '120, '223 and '360 patents are all rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Daudelin patents to different patent examiners at different times and failing to inform the different patent examiners of Katz's prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

**Statements Regarding the Riskin Patent**

100. Upon information and belief, Katz failed to inform the PTO of inconsistent positions taken with respect to U.S. Patent No. 4,757,267 to Riskin ("the Riskin patent").

101. As part of the prosecution of the '075 patent, Katz stated " . . . that the Riskin patent discloses the utilization of ANI and DNIS signals to accomplish telephone routing."

102. As part of the prosecution of the '120 patent, Katz took a position that was contrary to the position that Katz took as part of the prosecution of the '075 patent.

Specifically, as part of the prosecution of the '120 patent, Katz labeled the Riskin patent with an "A," and not with a "D" or "D/A." By labeling the Riskin patent with an "A" only, Katz characterized the Riskin patent to the patent examiner as disclosing aspects pertaining to ANI ("Automatic [calling party] number identification") only, and not DNIS.

103. By taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions, and having the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, Katz committed inequitable conduct, thereby rendering at least the '075 and '120 patents unenforceable.

104. At least the '703 and '223 patents, which are included in the asserted patents, each claim priority to at least either the '075 or '120 patents and claim subject matter related to these patents to which the Riskin patent is material. Accordingly, at least the '703 and '223 patents are likewise rendered unenforceable due to the inequitable conduct committed by Katz as part of the prosecution of the related '075 and '120 patents.

105. Accordingly, at least the '120 and '223 patents are rendered unenforceable for inequitable conduct due to Katz's intentionally taking inconsistent positions as to the scope of the Riskin patent at different times and failing to inform the patent examiner of the prior inconsistent positions with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

**Katz Intentionally Failed to Identify or Disclose Material Information From Related Litigations or Proceedings**

106. Pursuant to the M.P.E.P., including § 2001.01 and § 2001.06(c), "[w]here the subject matter for which a patent is being sought is or has been involved in litigation," each individual associated with the filing and prosecution of a patent application before the PTO has a duty to bring to the attention of the PTO "the existence of such litigation and any other material information arising therefrom."

107. Upon information and belief, as set forth below, as part of the prosecution of several of the asserted patents, Katz failed to identify or disclose to the patent examiners material information from several litigations of which Katz was aware, which involved related patents and material subject matter relating to the asserted patents, with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby constituting inequitable conduct.

***West Interactive Corp. v. First Data Resources, Inc. Litigation***

108. Upon information and belief, on October 24, 1990, West Interactive Corp. ("West") brought a declaratory judgment action, Civil Action No. 90-0-688, against First Data in the United States District Court for the District of Nebraska. West alleged, inter alia, that the '739, '150 patents and U.S. Patent No. 4,939,773 ("the '773 patent") are invalid on several theories including prior use and prior art.

109. West's allegations in that suit are material to at least the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents, all of which claim priority to at least the '739 patent and are directed to similar subject matter as provided in the '739 patent.

110. Upon information and belief, during the prosecution of the ‘984, ‘252, ‘309, ‘285, ‘707, ‘863, ‘551, ‘734, ‘762, ‘893, ‘120, ‘021, ‘065, ‘965, ‘703, ‘223, ‘415, and ‘360 patents, Katz was aware of the *West Interactive Corp. v. First Data Resources, Inc.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

111. Nonetheless, upon information and belief, Katz did not explicitly disclose the existence of the *West Interactive Corp. v. First Data Resources, Inc.* litigation to the examiners of the ‘984, ‘252, ‘309, ‘285, ‘707, ‘863, ‘551, ‘734, ‘762, ‘893, ‘120, ‘021, ‘065, ‘965, ‘703, ‘223, ‘415, and ‘360 patents as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of West’s allegations relating to the invalidity and unenforceability of the ‘739 and ‘150 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

***First Data Resources, Inc. v. 900 Million, Inc. et al. Litigation***

112. Upon information and belief, on October 9, 1990, First Data brought a suit, Civil Action No. 90-5418-HLH, against 900 Million, Inc. and others in the United States District Court for the Central District of California for the alleged infringement of the ‘739, ‘’150, and ‘773 patents.

113. Upon information and belief, the defendants in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation filed a counterclaim alleging invalidity and unenforceability of the '739, '150, and '773 patents.

114. Upon information and belief, the defendants' counterclaims in the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation are material to at least the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '965, '703, and '360 patents, all of which claim priority to at least the '739 patent.

115. Upon information and belief, during the prosecution of the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '965, '703, and '360 patents, Katz was aware of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

116. Nonetheless, upon information and belief, Katz did not explicitly disclose the existence of the *First Data Resources, Inc. v. 900 Million, Inc., et al.* litigation to the examiners of the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '965, '703, and '360 patents as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739, '150, and '773 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

***First Data Resources Inc. v. West Interactive Corp et al. Litigation***

117. Upon information and belief, on August 20, 1991, First Data brought suit, Civil Action No. 91-4471-TJH, against West Interactive Corp. and Fantasy Sports Concepts, Inc. in the United States District Court for the Central District of California for the alleged infringement of the '739, '150 and '298 patents.

118. Upon information and belief, the defendants in the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation filed a counterclaim alleging, inter alia, the invalidity and unenforceability of the '739, '150 and '298 patents.

119. The defendants' allegations in that suit are material to at least the '984, '252, '309, '285, '707, '863, '551, '734, '762, '893, '120, '021, '065, '965, '703, '223, '415, and '360 patents, all of which claim priority to at least the '739 patent.

120. Upon information and belief, during the prosecution of these asserted patents, Katz was aware of the *First Data Resources Inc. v. West Interactive Corp. et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

121. Nonetheless, upon information and belief, as part of the prosecution of at least the '863, '551, '734 and '120 patents, which are part of the asserted patents, Katz did not disclose the existence of the *First Data Resources Inc. v. West Interactive Corp., et al.* litigation (or in the case of the '285 patent, Katz waited to report the existence of the litigation until after payment of the issue fee) to the examiners of the '309, '863, '551, '734 and '120 patents as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of the defendants' allegations relating to the invalidity and unenforceability of the '739,

'150, and '298 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

***Ronald A. Katz Tech Licensing, L.P. V. Micro Voice Applications, Inc. et al. Litigation***

122. Upon information and belief, on February 9, 1999, Katz filed suit, Civil Action No. 99-CV-592, against Micro Voice Applications, Inc. and others in the United States District Court for the Northern District of California for infringement of the '739, '153, '252, '309, '285, '707, '863, and '734 patents.

123. In response to Katz's Complaint, the defendants in the *Ronald A. Katz Tech. Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation, alleged, inter alia, that the '739, '153, '252, '309, '285, '707, '863, and '734 patents are invalid and/or unenforceable.

124. The defendants' allegations in the *Ronald A. Katz Tech. Licensing, L. P. v. Micro Voice Applications, Inc., et al.* litigation are material to at least the '065 and '965 patents, which are related patents to the patents at issue in that suit.

125. Upon information and belief, during the prosecution of the '065 and '965 patents, Katz was aware of the *Ronald A. Katz Tech. Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

126. Nonetheless, upon information and belief, as part of the prosecution of at least the '065 and '965 patents, Katz did not disclose the existence of the *Ronald A. Katz Tech. Licensing, L.P. v. Micro Voice Applications, Inc., et al.* litigation to the examiners

of the `065 and `965 patents as part of prosecution of these patents. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of the defendants' allegations relating to the invalidity and unenforceability of the 739, '153, '252, '309, '285, '707, '863, and '734 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure was committed with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

***Ronald A. Katz Tech Licensing, L.P. et al. v. AT&T Corp. et al. Litigation***

127. Upon information and belief, on July 8, 1997, Katz and MCI Telecommunications Corp. brought suit, Civil Action No. 97-CV-4453, against AT&T Corp. and others in the United States District Court for the Eastern District of Pennsylvania for infringement of the '739, '150, '298, '075, '929, '984, '153, '252, '309, '285, '707, '645, '120, and '863 patents.

128. In reply, AT&T Corp. asserted, *inter alia*, that the '739, '150, '298, '075, '929, '984, '153, '252, '309, '285, '707, '645, '120, and '863 patents are invalid.

129. AT&T Corp.'s allegations in the *Ronald A. Katz Tech. Licensing, L.P. v. AT&T Corp., et al.* litigation are material to at least the '120 patent, which is related to and claims related subject matter to the patents involved in that litigation.

130. Upon information and belief, during the prosecution of the `120 patent, Katz was aware of the *Ronald A. Katz Tech. Licensing, L.P. v. AT&T Corp. et al.* litigation and of material information arising therefrom, as set forth in the pleadings and other papers arising therein.

131. Nonetheless, upon information and belief, Katz did not disclose the existence of the *Ronald A. Katz Tech. Licensing, L.P. v. AT&T Corp. et al.* litigation to the examiners of the '120 patent as part of prosecution of this patent. Moreover, upon information and belief, Katz did not disclose to the examiners of these patents the nature of AT&T's allegations relating to the invalidity of the '739, '150, '298, '075, '929, '984, '153, '252, '309, '285, '707, '645, '120, and '863 patents as set forth in the pleadings and other papers arising in the litigation. Upon information and belief, this failure to disclose was committed with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering these patents unenforceable.

**Patent Interference No. 103,697**

132. Upon information and belief, Patent Interference No. 103,697 was declared on February 13, 1996, and was finalized by November 20, 1996. As part of that interference, the Board of Patent Appeals and Interferences ("BPAI") found that claims of at least some of the counts of Patent Interference No. 103,697 were not entitled to the benefit of the filing date of the '968 patent.

133. The BPAI's conclusion that the '968 patent lacked written support for certain alleged limitations would have been material to the patent examiners of the '863, '965, '734 and '120 patents, for purposes of, for example, establishing the effective date of a claim for purposes of analyzing prior art. Indeed, upon information and belief, all of the '863, '965, '734 and '120 patents claim priority to the '968 patent, and many of them, including at least the '863 and the '551 patents, are disclaimed with respect to the '968 patent.

134. Nonetheless, upon information and belief, Katz failed to bring the existence of Patent Interference No. 103,697 to the attention of the patent examiners of at least the '863, '965, '734 and '120 patents. Moreover, upon information and belief, Katz failed to bring to the attention of the patent examiners of at least the '863, '156, '965, '734 and '120 patents the BPAI's findings, i.e., that claims of at least some of the counts of Patent Interference No. 103,697 were not entitled to the benefit of the filing date of the '968 patent.

135. Upon information and belief, these failures to disclose were committed with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering at least the '863, '965, '734 and '120 patents unenforceable.

136. Katz intentionally failed to Inform Patent Examiners of Adverse Findings by Others.

137. The M.P.E.P. § 2001.06(b) states that each individual associated with the filing and prosecution of a patent application before the PTO has "a duty to bring to the attention of the examiner, or other [USPTO] official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question." Furthermore, according to this section of the M.P.E.P., such individuals: "cannot assume that the examiner of a particular application is necessarily aware of other applications which are `material to patentability' of the application in question, but must instead bring such other applications to the attention of the examiner." For example, if a particular inventor has different applications pending in which similar subject matter but patentably

indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications.

**Adverse Findings In Related Patent Prosecutions**

138. During the prosecution of the '344 patent, Katz made the false assertion that the '968 patent supported the limitation "automatic number identification (ANI) decoder means responsive to predetermined signals on said telephone trunk for providing a calling party identification number." Further, upon information and belief, Katz falsely asserted that the "[r]eferences cited are based on U.S. Patent No. 4,792,968 to Katz with a filing date of Feb. 14, 1987, of which the present application is a continuation."

139. The examiner of the '344 patent, Examiner Brown, in a 1990 Office Action, refuted Katz's assertion that the '344 patent application was a continuation of the '968 patent, noting, "the present application is not a continuation of '968 . . . ." Rather, the pending application that resulted in the '344 patent was a continuation-in-part, in which new matter was added to the specification, and as such, any claims directed to the new matter were not entitled to the effective date of the '968 patent. Further, Examiner Brown rejected Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Specifically, Examiner Brown stated that "applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANT) decoder means . . .'"

140. Despite Examiner Brown's refutation of Katz's assertions that the `344 patent application was a continuation of the '968 patent and that the '968 patent supported the automatic number identification (ANI) decoder means limitation, in the subsequent Patent Interference No. 103,697, Katz claimed support for "means connected

to said interface switching means for directly providing a caller telephone number from said telephone facility" in the '968 patent.

141. Further, upon information and belief, during the Patent Interference No. 103,697, Katz did not inform the Board of Patent Appeals and Interferences of Examiner Brown's prior repudiation of Katz's assertion Katz's assertion that the '968 patent supported the automatic number identification (ANI) decoder means limitation. Katz did not inform the Board of Patent Appeals and Interferences of at least Examiner Brown's prior statement "that applicant's patent [i.e., the '968 patent] does not in fact disclose or describe an 'automatic number identification (ANI) decoder means . . . .'"

142. Examiner Brown's prior repudiation of Katz's assertion would have also been material to the Board of Patent Appeals and Interferences' determination as to whether Katz was entitled to antedate the U.S. Patent No. 4,797,911 to Szlam ("the Szlam patent"), particularly in as much, as the Board ultimately concluded that Count 1, which was alleged by Katz to have support in the '968 patent, was found lacking by the Board. Count 1 recited, in part, "means connected to said interface switching means for directly providing a caller telephone number from said telephone facility" and "computer means ...responsive to said caller telephone number . . ."

143. Upon information and belief, Katz intentionally failed to inform the Board of Patent Appeals and Interferences of the prior repudiations of Katz's assertions that certain claim limitations relating to processing ANI were supported in the '968 patent in violation of the duty of candor with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled.

144. Likewise, upon information and belief, during prosecution of the `965 patent, Katz attempted to traverse a claim rejection of Katz's then pending claim 68 in light of the Szlam patent by falsely claiming that "Claim 68 as amended is fully supported by Applicant's earlier parent patent no. 4,792,968, filed on February 24, 1987, before . . . Szlam."

145. Upon information and belief, Katz failed to inform the examiner of the '965 patent of Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means."

146. Examiner Brown's conclusion that the '968 patent specification did not support the "automatic number identification (ANI) decoder means," would have been material to the examiner of the '965 patent in deciding the patentability of the pending claims, particularly with respect to antedating prior art.

147. Upon information and belief, Katz intentionally failed to inform the examiner of the '965 patent of Examiner Brown's prior conclusion in violation of the duty of candor and with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '965 patent unenforceable.

148. Likewise, during prosecution of the '551 patent, Examiner Brown rejected certain claims submitted by Katz pursuant to 35 U.S.C. § 112 for lack of written support. Specifically, Examiner Brown stated that "[t]he text actually is not found to describe how the interaction between the caller and the operator would proceed after the caller has been transferred thereto for 'person-to-person' interaction, much less that such interaction necessarily would result in data entries being transferred to the memory."

149. Upon information an belief, Katz continued prosecution of the same subject matter rejected by Examiner Brown in a subsequently filed application, which matured into the '065 patent, and again, in another subsequently file application, which matured into the '360 patent. Both of these applications were before a different patent examiner, Examiner Weaver.

150. Upon information and belief, Katz failed to inform Examiner Weaver that Examiner Brown found a lack of written support for the claimed subject matter in the prior '551 patent based on the same specification. Upon information and belief, Katz's failure to disclose to Examiner Weaver the finding of Examiner Brown regarding a lack of written support was in violation of Katz's duty of candor with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '551, '360, and '065 patents, which are part of the asserted patents, unenforceable.

**Adverse Findings From Appeal Rulings**

151. Upon information and belief, Katz failed to inform the patent examiners of certain of the asserted patents of the existence and outcome of certain Appeal Rulings of related patents. At least some of the Appeal rulings upheld rejections made by the relevant patent examiner, which were, in some instances, adverse or contrary to positions Katz took during the prosecution of one or more of the asserted patents.

152. For example, upon information and belief, in Appeal No. 94-0834 (Application No. 07/640,337), the Board of Patent Appeals and Interferences found that the Barger patent, which is prior art to the asserted patents, disclosed a multiple format

system for interacting with callers based on the callers dialing distinct telephone numbers.

153. The Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material to the patent examiners of at least the '734, '120, '065 and '965 patents with respect to any claims reciting a multiple format limitation.

154. Nonetheless, upon information and belief, Katz failed to inform the examiners of at least the '734, '120, '065 and '965 patents of the Board of Patent Appeals and Interferences' finding that the Barger patent disclosed a multiple format system for interacting with callers based on the callers dialing distinct telephone numbers.

155. Upon information and belief, Katz intentionally failed to disclose the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent, with the intent to deceive the PTO into issuing patent claims of a scope beyond which Katz was entitled, thereby committing inequitable conduct and rendering the '734, '120, '065 and '965 patents unenforceable.

156. The inequitable conduct committed by Katz with respect to the `'734, '120, '065 and '965 patents taints other related patents, which claim priority to these patents and which claim related subject matter to which the Board of Patent Appeals and Interferences' finding with respect to the scope of disclosure of the Barger patent would have been material, thereby rendering these related patents, including at least the '223 and '360 patents unenforceable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Citizens Financial Group, Inc., Citizens Bank, Citizens Bank New Hampshire, Citizens Bank of Connecticut, Citizens Bank of Massachusetts, Citizens Bank of Pennsylvania, Citizens Bank of Rhode Island, Citizens Bank, N.A., and Charter One Bank, N.A. respectfully request that this Court:

(a) Enter judgment in favor of Counterclaim Plaintiffs on all counts of the Counterclaim;

(b) Declare that the patents-in-suit are invalid;

(c) Declare that the patents-in-suit are unenforceable;

(d) Find that this is an exceptional case pursuant to 35 U.S.C. § 285 and award Counterclaim Plaintiffs their attorneys' fees and costs;

(e) Grant Counterclaim Plaintiffs such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Citizens Financial Group, Inc., Citizens Bank, Citizens Bank New Hampshire, Citizens Bank of Connecticut, Citizens Bank of Massachusetts, Citizens Bank of Pennsylvania, Citizens Bank of Rhode Island, Citizens Bank, N.A., and Charter One Bank, N.A. demand a jury trial on all issues so triable.

Respectfully submitted,

Citizens Financial Group, Inc., Citizens Bank, Citizens Bank New Hampshire, Citizens Bank of Connecticut, Citizens Bank of Massachusetts, Citizens Bank of Pennsylvania, Citizens Bank of Rhode Island, Citizens Bank, N.A., and Charter One Bank, N.A.,

By Their Attorneys

/s/ Craig M. Scott

Craig M. Scott (R.I. Bar # 4237)
Robert M. Duffy (R.I. Bar # 4428)
Christine K. Bush (R.I. Bar #5587)
DUFFY SWEENEY & SCOTT, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701
cscott@duffysweeney.com
rduffy@duffysweeney.com
cbush@duffysweeney.com

July 31, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS CITIZENS FINANCIAL GROUP, INC., CITIZENS BANK, CITIZENS BANK NEW HAMPSHIRE, CITIZENS BANK OF CONNECTICUT, CITIZENS BANK OF MASSACHUSETTS, CITIZENS BANK OF PENNSYLVANIA, CITIZENS BANK OF RHODE ISLAND, CITIZENS BANK, N.A., AND CHARTER ONE BANK, N.A. TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT was served by electronic means on July 31, 2007 upon the following counsel for Plaintiff Ronald A. Katz Technology Licensing, L.P.:

John E. Bulman,
LITTLE, MEDEIROS, KINDER, BULMAN
& WHITNEY PC
72 Pine Street
Providence, RI 02903
Tel: (401) 272-8080
Fax: (401) 521-3555
jbulman@lmkbw.com

Stephen C. Neal
COOLEY GODWARD KRONISH LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Tel.: (650) 843-5000
Fax: (650-857-0663
nealsc@cooley.com

Frank V. Pietrantonio
Jonathan G. Graves
COOLEY GODWARD KRONISH LLP
One Freedom Square
11951 Freedom Drive
Reston, VA 20190-5656
Tel.: (703) 456-8000
Fax: (703) 456-8100
fpietrantonio@cooley.com
jgraves@cooley.com

/s/ Craig M. Scott